FRED. LEWIS *et al.* v. L. D. LEWELLING, *as Commander
in Chief of the Kansas National Guard, et al.*

1. STATE MILITIA, *Power of Governor to Disband.*   Under the constitu-
tion of the state, and chapter 142, Laws of 1885, providing "for the
organization, government and compensation of the militia of the
state," the governor, as commander in chief of the militia, has the
power to disband and muster out at any time any company of the
national guard, comprising the active militia of the state.    Such
power has always been exercised by the governors of the state since
the adoption of said chapter 142.

2. ENLISTMENT—*Ending Term.*   Enlistment in the national guard—the
active militia—is not to be construed upon the part of the state as
a contract; but the state, through the governor, as commander in
chief, may put an end to the term of enlistment before it has regu-
larly expired.

3. MILITARY OFFICERS—*Length of Term—Invalid Statute.*   The provi-
sion in ¿ 4, chapter 142, Laws of 1885, authorizing officers to be com-
missioned for a term of five years, is violative of § 2, article 15, of the
constitution, forbidding the legislature to create any office the tenure
of which is longer than four years.    Military officers are within the
provisions of the constitution.

4. OFFICE—*Tenure not Declared by Law.* Where the statute fixes a term of office at such a length of time that it is unconstitutional, the tenure thereof is not declared by law, and the office is held only during the pleasure of the appointing power.

*Error from Marion District Court.*

THE plaintiffs filed their petition on July 15, 1893, against L. D. Lewelling, as commander in chief of the Kansas national guard, H. H. Artz, as adjutant general of the state, and S. A. Maginnis, as acting colonel of the second regiment of the Kansas national guard, alleging that they, the plaintiffs, were the officers and privates of company G of the second regiment, duly commissioned and enlisted as such; that their term of service, as provided by the terms and conditions of their enlistment and by the laws of Kansas, is for the period of five years; that the term of their enlistment had not expired in the case of any one of them; that company G was duly organized in pursuance of the laws of the state and the rules and regulations of the military board thereof, on or about October 1, 1885, and that the company has, during all said time, kept its membership of noncommissioned officers and privates up to a number in excess of 40 and not in excess of the number of 60; that the company had been provided with arms, uniforms and other military equipments as provided by law, and had at all times since its organization conformed to the military laws of the state, and all the rules and regulations of the military board, concerning meetings, drilling, instruction, practice in the manual of arms and annual muster, and fully complied with all other lawful rules, regulations and orders promulgated by the military authorities of said state; that neither the company nor any of its members had been guilty of any neglect of duty, breach of discipline, disobedience of orders, or violation of law, nor of any conduct which would authorize their discharge or dismissal from the military service of the state before the expiration of their term of enlistment; that, notwithstanding the premises, L. D. Lewelling, as commander in chief of the

national guard, without any lawful authority and in excess of his power as such officer, had issued an order directing that all the officers and enlisted men of the company be mustered out of the military service of the state and discharged therefrom on July 15, 1893, at 4 o'clock P. M., and that the company then surrender to a mustering officer all its arms, equipments, and other military property of the state in its possession; and that the said H. H. Artz, as adjutant general of the state, was proceeding to, and would, unless restrained by the court, carry out the order at the time, and that he had for that purpose detailed the said S. A. Maginnis as a mustering officer, to meet the company at its armory at Marion, in this state, on the said day and hour, to muster it out and discharge each of the plaintiffs from the military service of the state; all of which orders and acts are and will be illegal and without the authority of any law whatever, and in violation of the rights and privileges of the company and each of its members, and for which threatened wrongs and injuries the plaintiffs are wholly remediless at law, and without the means of protection from the threatened injuries and wrongs, except by and through the orders, injunctions and processes of the court. The petition closed with a prayer for an order restraining the defendants, and each of them, from mustering out the company.

To this a demurrer was filed by all the defendants, as follows:

"And now comes said defendants, and severally demur to the petition filed against them herein, for the reasons that it appears on the face of said petition — first, that this court has no jurisdiction of the persons of these defendants, nor of the person of either of them, nor of the subject of the action; second, that the plaintiffs have no legal capacity to sue; third, that there is a defect of parties, plaintiff and defendant; fourth, that several causes of action are improperly joined; fifth, that the petition does not state facts sufficient to constitute a cause of action."

On September 29, 1893, the demurrer was submitted to the court, after argument, and sustained. The plaintiffs excepted, and bring the case here.

*Keeler & Dean*, for plaintiffs in error.

*Frank Doster*, and *G. C. Clemens*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The question for our determination in this case is, whether the governor of the state, as commander in chief of the national guard, comprising the active militia of the state, has the power to disband or muster out a company of the guard before the expiration of the term of its enlistment, except for insubordination, breach of discipline, insuffiency of service, or other like cause.   The constitution ordains that

" The governor shall be commander in chief, and shall have power to call out the militia to execute the laws, to suppress insurrection, and to repel invasion; that the officers of the militia shall be elected or appointed, and commissioned in such manner as may be provided by law; that the legislature shall provide for organizing, equipping and disciplining the militia in such manner as it shall deem expedient not incompatible with the laws of the United States." (Sections 2, 3, and 4, article 8, of the constitution.)

Chapter 142, Laws of 1885, provides "for the organization, government and compensation of the militia of the state." (Gen. Stat. of 1889, ¶¶ 3762–3798.)   Section 5 declares that " In time of peace, the national guard shall consist of *not more* that 30 companies of infantry, two companies of cavalry, and one battery of light artillery."   Section 3 provides that " The governor of the state shall be the commander in chief of the militia, with power to appoint certain military officers;" and § 7 provides that the major general, four brigadier generals, and the adjutant general, appointed by the governor, shall be a military board; and § 8, in prescribing the duties of this board, constitutes it an advisory body to the commander in chief on all the military interests of the state.   The board is given authority to prepare and promulgate the necessary provisions, rules and regulations for "the organization, government and compensation of the national guard;" such provisions, rules and regulations to have force when approved

by the governor, as commander in chief. The board has also the power, with the consent of the governor, to make any changes in the military organization of the state that may be necessary to conform the same to the laws of the United States.

The statute does not make it compulsory upon the governor or the military board to keep the military force of the state up to its maximum of 33 companies. We have recently had occasion, in the case of *In re Sanders, Petitioner*, ante, p. 191, to construe the words "organization," and "management," or "government." Without unnecessarily repeating what was said in that case, we are of the opinion that the power to organize and govern the national guard of the state, conferred upon the governor, as commander in chief of the militia, by the constitution and the statute, gives him the authority to recruit or fill up the national guard or active militia to the maximum limit permitted by the statute, and also to disband or muster out at any time any company thereof. Such power has been uniformly exercised by the governors of the state ever since the adoption of chapter 142. On October 1, 1887, six companies of the guard were disbanded and mustered out of the service upon the written order of Gov. John A. Martin, as commander in chief, signed by A. B. Campbell, as adjutant general. In 1889 and 1890, Governor Humphrey found it necessary, from various causes, to muster out of the service 10 companies. He filled their places with new companies. In 1890–'91, the same governor mustered out eight companies. Other instances of disbanding of companies of the guard might be mentioned. (Report of Adjutant General, Public Documents of the State, vol. 1, 1887–'88, p. 29; Report of Adjutant General, Public Documents, 1889–'90, vol. 1, p. 5; Report of Adjutant General, Public Documents, vol. 1, 1891–'92, p. 31.) The general and uniform exercise of the authority by a coördinate department of the government, under any particular statute, is entitled to some consideration in the interpretation of its provisions, if it is at all doubtful in its terms.          —

1. State militia, power of governor to disband.

Section 4, of chapter 142, providing that enlistments in the national guard shall be for the term of five years, might limit the power of the governor, as commander in chief, to disband or muster out any company before the expiration of the five years, if enlistments in the militia were a contract, to be considered according to the principles which regulate contracts generally. But the state is not bound by the terms of an enlistment, and may put an end to the term before it has regularly expired. (15 Am. & Eng. Encyc. of Law, 399; *United States v. Cottingham*, 1 Rob. [Va.] 615.)

2. Enlistment—ending term.

The provision in § 4 permitting officers to be commissioned for a term of five years is violative of § 2, art. 15, forbidding the legislature to create any office the tenure of which is longer than four years. Military officers are within the provisions of the constitution. Where the statute fixes a term of office at such a length of time that it is unconstitutional, the tenure thereof is not declared, and therefore the office is held only during the pleasure of the appointing power. (*The People v. Perry*, 79 Cal. 105.)

3. Military officers—length of term—invalid statute.

4. Office—tenure not declared by law.

Various other questions were discussed upon the hearing of this case; among others, the alleged unconstitutionality of the provisions of chapter 142, upon the ground that said chapter did not provide for organizing, keeping or disciplining all of the militia, but limited its operation, in times of peace, to 33 companies only. As the conclusion we have reached permits the disbandment of any company of the national guard by the governor, as commander in chief of the militia, and affirms the judgment, it is unnecessary to pass upon the other questions presented. If the statute, with the interpretation given to it by this court, is unwise or dangerous in any of its provisions, the legislature, which will convene in a few months, may, within the terms of the constitution, modify, amend or repeal it or any part thereof, as seems best to it, as the representative of all the people. As a general rule, the constitutionality of a whole statute ought not be passed upon,

unless directly involved in the final disposition of the case. The judgment of the district court will be affirmed.

All the Justices concurring.