STATE OF NORTH DAKOTA v. FARGO BOTTLING WORKS CO., A CORPORATION.

Opinion filed January 7, 1910.

**Penal Statutes — Construction.**

1. Chapter 187, page 277, Laws 1909, amending as it does section 9366, Rev. Codes 1905, is part of the Penal Code of this state, and

its construction comes within the provision of section 8538, Rev. Codes 1905, that "the rule of the common law that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

**Statutory Construction — Patent Ambiguity — Legislative Policy.**

2. If a penal statute of this state contains a patent ambiguity, and admits of two equally reasonable and contradictory constructions, that which operates in favor of a party accused under its provisions is to be preferred. Nothing will be regarded as included within the provisions of such statute that is not within its letter as well as its spirit. If the meaning of such a statute is simply obscure, the legislative intent in the passage of the act will be considered as a light to assist the court in arriving with more accuracy at its meaning. It is the duty of a court in construing such a statute to adopt that sense of the words which harmonizes best with the context and promotes in the fullest manner the apparent policy and objects of the legislature.

**Same.**

3. Chapter 187, page 277, Laws 1909, construed in the light of these principles, is not contradictory in its terms, and is not ambiguous in the sense that it is susceptible of two or more meanings equally clear and reasonable.

**Intoxicating Liquors — Construction of "Alcoholic Principle as a Distinctive Force" — "Become a Substitute for Ordinary Intoxicating Drinks."**

4. Considered with its context, under a fair, reasonable and ordinary interpretation of the wording, the clause contained in chapter 187, page 277, Laws 1909, in the words, "any kind of beverage whatsoever, which retaining the alcoholic principle or other intoxicating qualities as a distinctive force, may be used as a beverage and become a substitute for the ordinary intoxicating drinks," is intended to describe a beverage which contains alcohol or other drug having an intoxicating quality, in a quantity reasonably appreciable, and in which said drug has not by chemical combination with other drugs also contained in the liquor, lost its intoxicating principle, which liquor according to common experience and observation will be resorted to by those accustomed to use intoxicating liquors as a beverage upon a failure to procure the ordinary intoxicating drinks in the usual way. In such a liquor, alcohol or other drug of kindred quality preserving its native characteristics must be present, but not necessarily in such quantity as to produce intoxication.

**Constitutional Law — Legislative Acts — Subject Expressed in Title — Amendments.**

5. Chapter 187, page 277, Laws 1909, is not in any of its parts repugnant to section 61 of the state constitution, for the reason that

the subject of the act is not expressed in the title. Being an amendment to chapter 110, page 309, Laws 1890, it is a sufficient compliance with the constitutional requirement of the subject-matter of such amendment is, germane to the subject of the original act of which this amended section is a part and is within the title of that act.

### Constitutional Law — Legislative Definition — Title of Act.

6. Any liquor containing alcohol or the alcoholic principle or other intoxicating quality when declared by the legislature to be an intoxicating liquor, will be so regarded by the courts whether or not its ordinary use will produce intoxication in the average man. A definition of intoxicating liquor including within its provisions a liquor containing the alcoholic principle, but which it is admitted will not produce intoxication in any degree, is germane to the general subject of chapter 110, page 309, Laws 1890, and within the title, "An act to prescribe penalties for the unlawful manufacture, sale and keeping for sale of intoxicating liquors and to regulate the sale, barter and giving away of such liquors for medical, scientific and mechanical purposes."

### Statutes — Amendment — Re-enactment of Amended Portion.

7. Chapter 187, page 277, Laws 1909, is replete in itself, and does not purport to amend section 9353, Rev. Codes 1905, providing a penalty for violations of the prohibitory law, and while it by implication affects and modifies somewhat the meaning of said section 9353, as well as many other sections of the general statute, it is not for that reason repugnant to section 64 of the state constitution, requiring that all portions of the amended statute that are retained in the new enactment be incorporated and published in the amended act.

### Intoxicating Liquors — Substitutes — Police Power.

8. A malt liquor retaining the alcoholic principle as a distinctive force which it is admitted is "used throughout the state of North Dakota as a substitute for beer," cannot be regarded as an innocent, harmless and healthful beverage. It is a matter of common knowledge that a liquor of this description may be harmful in the sense that its use cultivates and stimulates an appetite for intoxicants which may become seriously detrimental to the general welfare. A liquor with these characteristics and used in this manner is a convenient vehicle of subterfuge and fraud and a means of evading the penalties of the prohibitory law. For this reason, a statute prohibiting the sale of such liquor within the state is a legitimate exercise of the police power of the state, and is not repugnant to the provisions of sections 1 and 13 of the state constitution.

### Intoxicating Liquors — Wrongful Sale — "Purity Malt."

9. Defendant having pleaded guilty to an information charging that it sold within the state a liquor labeled "Purity Malt," and com-

monly called and known as "malt," which is a malt liquor retaining the alcoholic principle as a distinctive force which was and is sold and used throughout the state of North Dakota as a substitute for beer, and that said beverage contained 1.75 per cent of alcohol by volume and 1.40 per cent of alcohol by weight, is guilty of a public offense and liable to an imposition of penalties provided for violation of the prohibitory law of the state.

Appeal from District Court, Cass county; *Pollock, J.*

The Fargo Bottling Works Company, a corporation, was convicted of the wrongful sale of intoxicating liquor in violation of the prohibitory law, and it appeals.

Affirmed.

*V. R. Lovell* and *George A. Bangs,* for appellant. *Arthur W. Fowler,* State's Atty., for the respondent.

ELLSWORTH, J. At its session in 1909 the Legislative Assembly of North Dakota passed an act, the wording of which, including the title, is as follows:

"An act to amend section 9366 of the Revised Codes of North Dakota, as amended by chapter 191 of the Laws of 1907, defining intoxicating liquors."

"Be it enacted by the Legislative Assembly of the state of North Dakota:

" 'Sec. 9366. Intoxicating liquor defined. The following liquors are hereby declared to be intoxicating and their intoxicating quality shall, by all courts, be presumed, viz.: Alcohol, whisky, rum, brandy, beer, ale, porter, wine and hard cider, also all spirituous malt, vinous, fermented or other intoxicating liquors or mixtures thereof by whatsoever name called whether mentioned in section one of this act or not, that will produce intoxication of any degree; or any mixtures of such, or any kind of beverage whatsoever, which retaining the alcholic principle or other intoxicating qualities as a distinctive force, may be used as a beverage and become a substitute for the ordinary intoxicating drinks, or any liquors or liquids which are made, sold or offered for sale as a beverage and which shall contain coculus indicus, copperas, opium, cayenne pepper, picric acid, Indian hemp, strychnine, tobacco, darnal seed, extract of logwood, salts of zinc, copper or lead, alum or any of its compounds, methyl alcohol or its derivatives, amyl alcohol or any extract or compound of any of the above ingredients, shall be considered and held to be intoxicating liquors within the meaning of this chapter.' "

"Sec. 2.  Emergency.  Owing to the inadequate definition of intoxicating liquors now existing there is an emergency existing and this act shall take effect immediately upon its passage and approval."

This act was approved by the Governor of North Dakota on March 11, 1909, and under the emergency clause attached took effect immediately.  On June 30, 1909, the state's attorney of Cass county filed in the district court of the Third judicial district for that county an information against the Fargo Bottling Works company, the defendant and appellant here, the charging part of which is to the effect that the said defendant "a corporation, late of the county of Cass and state aforesaid, did commit the crime of selling intoxicating liquor, committed in the manner following, to wit: That at said time and place the said defendant was and is a corporation duly organized and existing under and by virtue of the laws of the state of North Dakota; that at said time and place the said defendant did wilfully and unlawfully sell to one Arthur W. Fowler a quart bottle full of a certain beverage, which said beverage was then and there labeled 'Purity Malt,' and is commonly called and known throughout the state of North Dakota as 'Malt' and was and is a malt liquor, and that in the manufacture and production of which said beverage no alcohol was or is used as an ingredient, but in which, during such manufacture, the alcohol hereinafter referred to was and is produced by chemical action in the beverage itself, and which said beverage therefore then and there had and retained, by reason of the facts aforesaid, the alcoholic principle as a distinctive force, and was then and there and is sold and used throughout the state of North Dakota as a substitute for beer; that said beverage aforesaid contained one and seventy-five one-hundredths (1.75) per cent. of alcohol by volume, and one and forty one-hundredths (1.40) per cent. of alcohol by weight. This against the peace and dignity of the state of North Dakota, and contrary to the form of the statutes in such cases made and provided."

To this information the defendant corporation, when summoned to appear and answer pursuant to article 4, c. 15, Code Cr. Proc. (Rev. Codes 1905, Sections 10222-10230), interposed a demurrer on the ground "that the said information did not state facts sufficient to constitute a public offense."  This demurrer was argued before the district court and overruled by the court on July 23, 1909.  Thereafter, on August 18, 1909, the defendant filed a writ-

ten plea by the terms of which it "pleads guilty to the specific facts charged in the information herein without conceding, however, that such facts, if true, constitute a public offense." This plea being received and the state's attorney having moved for judgment against defendant upon its plea, the defendant interposed a motion in arrest of judgment upon the ground "that the information herein does not state facts sufficient to constitute a public offense." The court on the same day denied the motion in arrest of judgment and holding that the defendant by commiting the facts charged in the information was guilty of a public offense, to wit: that of selling intoxicating liquor contrary to the provisions of chapter 65 of the Penal Code as amended (Rev. Codes, 1905, Sections 9353-9395) as penalty imposed a fine of $400 and made an order that plaintiff have judgment against the defendant corporation for that sum together with its costs and disbursements of the action. A judgment in accordance with the mandate of this order was entered on the same day, from which judgment this appeal is taken.

In this court defendant submits for consideration four points, any of which, if sustained, require a reversal of the judgment of the the district court: (1) That a true interpretation of the terms of chapter 187, Laws 1909, does not include within the definition of intoxicating liquors or the prohibition of the statute liquors which, in fact, are non-intoxicating; (2) that if the interpretation contended for by the state in this case is the true interpretation of chapter 187, Laws 1909, then the provisions of said chapter offend section 61 of the state Constitution, in that the subject of the act is not expressed in its title; (3) that if the interpretation contended for by the state in this case is the true interpretation of chapter 187, Laws 1909, then the statutory amendment embraced in said chapter offends section 64 of the state Constitution so far as applied to the facts of this case, because section 9353, Rev. Codes 1905, upon the penal provisions of which this prosecution is based, is not "re-enacted and published at length" in the amendatory act; and (4) that chapter 187, Laws 1909, even though not vulnerable to the constitutional objections heretofore urged, so far as it attempts to include within the penal provisions of our statutes one prohibiting the manufacture and sale of a liquor not intoxicating, is a violation of an essential part of the rights of liberty and property as guaranteed to the defendant by section 1 of our Constitution, in that it seeks to interfere with defendant's enjoyment upon terms of equality with

all others in similar circumstances of the privilege of pursuing an ordinary calling of trade and of acquiring, possessing, and protecting property to an extent not warranted by a legitimate exercise of the police powers of the state.

Considering these points in the order in which they are enumerated, we will now determine whether or not chapter 187, Laws 1909, as fairly and reasonably construed, embraces within its terms any liquors not generally recognized as intoxicating. In our construction of this statute in all its parts, we bear in mind that it is a penal statute; that nothing is to be regarded as included within its provisions that is not within its letter as well as its spirit; and that, if it contains a patent ambiguity and admits of two reasonable and contradictory constructions, that which operates in favor of a party accused under its provisions is to be preferred. Further than this, however, rules of, strict construction, especially those of the common law, have no application to the statutes of our state. Section 187, Laws 1909, amending as it does section 9366, Rev. Codes 1905, is part of our Penal Code and clearly within the provision that "the rule of the common law that penal statutes are to be strictly construed has no application to this Code. All its provisions are to be construed according to the fair purport of their terms, with a view to effect its objects and promote justice." Rev. Codes 1905, Section 8538. Penal statutes, therefore, "like all others, are to be fairly construed according to the legislative intent as expressed in the enactment, the court refusing on the one hand to extend the punishment to cases which are not clearly embraced in them, and on the other equally refusing by any mere verbal nicety, or forced consideration or equitable interpretation, to exonerate parties plainly within their scope." 2 Lewis, Sutherland Statutory Construrction (2d Ed.) Section 519. If the meaning of the statute or of some of its parts is simply obscure, the legislative intent in the passage of the act will be considered as a light to assist the court in arriving with more accuracy at its meaning, and a construction which gives some meaning to the statute or an obscure part or clause thereof will be preferred to one which renders it entirely nugatory and meaningless. "In short," as well stated by Judge Story, "it appears to me that the proper course in all these cases is to search out and follow the true intent of the Legislature, and to adopt that sense of the words which harmonizes best with the context and promotes in the fullest manner the apparent policy and objects of the

Legislature." United States v. Winn, Fed. Cas. No. 16,740. It is apparent at a glance that the purpose of this chapter is to define the liquors that are to be presumed by the courts to be intoxicating within the meaning of the statute prohibiting the sale and manufacture of intoxicating liquors. Pursuant to this purpose, a number of liquors or beverages are enumerated, divided into three or four classes, the first class including only such as are generally recognized as intoxicating, viz., "alcohol, whisky, rum, brandy, beer, ale, porter, wine and hard cider." The second class includes not by name but by general designation, "all spirituous, malt, vinous, fermented or other intoxicating liquors or mixtures thereof by whatsoever name called  *  *  *  that will produce intoxication of any degree, or any mixtures of such." The third class, by a description more sweeping and general than any in the act, embraces "any kind of beverage whatsoever, which retaining the alcoholic principle or other intoxicating qualities as a distinctive force, may be used as a beverage and become a substitute for the ordinary intoxicating drinks"—and the fourth class any liquors or liquids which are made, sold or offered for sale as a beverage and which shall contain "coculus indicus, copperas," and other poisonous drugs specifically mentioned. All liquors and beverages or mixtures of the same fairly included in any of these classes by express legislative declaration are intoxicating, and this court, as all other courts dealing with the subject, is required to so presume and hold. On the other hand, it may be said that any liquor which does not come fairly and reasonably within the letter and spirit of the definition announced in chapter 187 is not to be regarded as an intoxicating liquor in prosecutions under the penal prohibitions of our statute.

Accepting the foregoing classification for convenience in reference throughout this opinion, it is conceded that a liquor with the characteristics of "Purity Malt" is not included in the first, second, or fourth class, and that defendant is liable, if at all, for a violation of the statute prohibiting the sale of intoxicating liquors only in case this beverage is embraced in the third class. Defendant by its demurrer and plea admits that "Purity Malt" is a malt liquor, retaining the alcoholic principle as a distinctive force, which is sold and used throughout the state of North Dakota as a substitute for beer. Counsel for the state upon this appeal call attention to the fact that the information does not allege that this liquor is in fact

intoxicating, and that "for the purpose of this case it may and should be assumed that this beverage will not produce intoxication of any degree." By these admissions on the part of the defendant and the state the issue is narrowed to the single question of whether or not the sale of malt liquor retaining the alcoholic principle as a distinctive force and used throughout the state of North Dakota as a substitute for beer, but that will not produce intoxication in any degree, is under an ordinary and reasonable construction or the language used in chapter 187, Laws 1909, within the prohibition of the statute.

It does not appear to us that the language used in describing the third class of liquors or beverages referred to in the act is ambiguous in the sense that it is susceptible of two or more meanings equally clear and reasonable; neither is it contradictory in its terms. It lacks somewhat the transparent clearness which proceeds from directness and brevity of expression, and is an illustration of the principle that ornate effect obtained by means of much superfluous wording usually serves to obscure the meaning. Overworded as it is, however, the clause will admit of but one meaning that appeals alike to sound judgment and common sense.

It is urged by defendant that the phrase, "retaining the alcoholic principle," can mean only that the beverage must contain alcohol in sufficient quantity to produce intoxication; otherwise it would not be connected with the words, "or other intoxicating quality," which immediately follow. It further urges that the expression, "as a distinctive force," means to an intoxicating degree, and that the words, "become a substitute for the ordinary intoxicating drinks," can refer only to beverages that will produce intoxication. Examining carefully the expressions used, however, and giving to the words included in each its ordinary signification, we do not think the clause can be reasonably said to have such meaning. The term "alcoholic principle" has no reference whatever to quantity, but only to some characteristic or quality. As said by Judge Brewer in the Kansas intoxicating liquor cases (25 Kan. 751) : "Alcohol is the intoxicating principle, the basis of all intoxicating drinks. Whatever contains alcohol will, if a sufficient quantity be taken, produce intoxication." This principle or quality tends always to intoxication in a degree, dependent entirely upon the quantity used; but whether or not intoxication is produced the "principle" remains the same.

In its use, therefore, of the expression "retaining the alcoholic principle or other intoxicating quality," the Legislature evidently meant to connect without reference to quantity two qualities, viz., the intoxicating quality present in alcohol with that found in other poisonous drugs, possibly those, or some of these, mentioned in the latter part of the act. The phrase, "as a distinctive force," as we understand it, implies not only that alcohol be present in appreciable quantity, but that, being so present, it retain its characteristic intoxicating principle. It is a well-known scientific fact that alcohol, when used in solution with other drugs, may by chemical combination lose many if not all of its characteristics, and become neutralized to such degree as no longer to retain the intoxicating principle. If it is so used, it is apparent that, though present in recognizable quantity, it is not present as a distinctive force. The word "substitute" means "one who or that which stands in the place of another; that which stands in lieu of something else." Webster's Dict. Defendant argues that the meaning is limited to "one thing serving the purpose of another," and that under this definition the only "substitute" for an intoxicating drink, is one that will serve the same purpose, or, in other words, produce intoxication. Such however, is not the only or the usual meaning of the word. As held by Judge Brewer in the opinion heretofore referred to, the intoxicating liquor acts were not intended as an "attack upon bay rum, camphor, or tincture of lemon. It was intended to strike at such liquors and mixtures only as were in ordinary and known use as intoxicating beverages, or which in the failure to obtain such beverages it could fairly and reasonably be believed would be used as substitutes." The expression "become a substitute for the ordinary intoxicating drinks" can only refer to such beverages as common experience teaches will be used in place of well-known intoxicating liquors, when by reason of a prohibitory statute or other extraordinary case they cannot be obtained by the usual means of sale and purchase.

In our view, therefore, under a true, fair, and reasonable interpretation, that clause of chapter 187, Laws 1909, defining the third class of liquors that are to be deemed intoxicating, is intended to describe a beverage which containing alcohol or other drug having an intoxicating quality in a quantity reasonably appreciable in which it has not by chemical combination with other drugs lost its intoxicating principle, and which liquor according to common ex-

perience and observation. will be resorted to upon failure to pro-
cure the ordinary intoxicating drinks in the usual way. In such
a liquor, alcohol, or other drug of kindred quality preserving its
native characteristics must be present, but not necessarily in such
quantity as to produce intoxication. Whether it is present in a
quantity reasonably recognizable and as a distinctive force is a
question of fact to be determined by the ordinary tests, among which
is the consideration that it "may be used as a beverage and become
a substitute for the ordinary intoxicating drinks."

In thus interpreting the meaning of a clause of this statute, we
are not unmindful of the fact that a cardinal principle of construc-
tion requires that the act be considerel in its entirety. So con-
sidering it, we first observe that all liquors and beverages con-
taining alcohol that are either well recognized as intoxicating or
which as a matter of fact may produce intoxication to any degree
are included in the first and second classes described. All liquors
in any quantity containing drugs of intoxicating quality other than
alcohol are included in the fourth class. Therefore, if that part of
the statute describing the third class refers only to liquors that will
produce intoxication, it is entirely superfluous. It adds no sensible
meaning to the amended statute, and might be stricken out without
narrowing the scope of the definition in the slightest degree. On the
other hand, if this clause is intended to describe liquors that con-
tain alcohol or other intoxicating drugs in a quantity so small that
they will not ordinarily produce intoxication, it defines a class not
covered by the other parts of the statute and accomplishes a definite
purpose by its presence. Under this interpretation, it fits into and
harmonizes with the other parts of the statute in a way that is
very persuasive of the conclusion that no other meaning could
have been intended.

It is urged by the defendant that the obscurity or doubtful im-
port of the wording of this part of the statute warrants in its in-
terpretation a consideration of extraneous facts such as "the con-
ditions existing at the time of the passage of the law, the object to
be gained by its enactment, the record of its passage as shown by
the legislative journals, and any other matters contemporaneous
with its enactment that will throw light upon the question." As
heretofore stated, the statute is not in our view ambiguous or con-
tradictory or of such doubtful import as to require a resort to these
means of interpretation; and, were it done, the result would be only

to enforce with additional strength the construction we put upon this statute. A glance at the history of the law amended by this act shows that it was passed in the year 1890 pursuant to a constitutional provision requiring the legislative assembly to prescribe regulations and penalties prohibiting the manufacture or sale within this state of any intoxicating liquors; that in the years 1895, 1897, and 1907 amendments to the section of the law defining intoxicating liquors were passed, and that the evident purpose of these amendments was to broaden the definition and embrace within its scope certain liquors and beverages not before included. All these considerations speak in favor of an intent of the Legislature in these successive years to amplify the definition of intoxicating liquors, and extend its terms to beverages not already included in the first, second, and fourth classes. It is, however, urged by the defendant and admitted by the state that the legislative bill which was afterwards enacted as chapter 187, Laws 1909, when first introduced, contained in its first clause the word "malt," immediately after the word "Wine," and that at some time in the course of its passage this word was stricken out, and does not appear in the law as enacted. Defendant urges that the elision of this word by the Legislature is evidence of an intent to exclude the drink known as "malt" from the operation of the statute. It is apparent, however, that there may have been several other reasons for striking out the word which operate in a view contrary to such contention. The Legislature may have noted that malt, not being generally recognized as intoxicating, was not properly included in a list of liquors that are so recognized; or it may have reasoned that liquors of the malt class were covered by the general description in the definition of the third class, and that specific mention in the first class was superfluous; or it may have considered that such mention in the first class of a liquor bearing the specific name of "malt" would be merely confusing, as the word, as generally understood, describes not a specific liquor, but a class. An attempt to include it by name in the first class might thus have the effect of excluding it from the general description in the third class, while those disposed to sell it could readily evade the effect of the law, as thus worded, by the simple device of changing the name of the liquor from "malt" to "hop tea," "sea foam," "near beer," or any of the many names under which sales of liquors of this class are made. Any of those reasons would as logically apply to the act of the Legislature as the

one that it intended by striking out the word "malt" to include that entire class of liquors from the operation of the statute.

All facts necessary to bring "Purity Malt," the liquor sold by defendant, within the definition of chapter 187, Laws 1909, as we construe it, are supplied by the admission of the defendant. A liquor containing 1.75 per cent. of alcohol by volume and 1.40 per cent. by weight may certainly be said to contain alcohol in appreciable quantity. It is admitted that the alcoholic principle was present as a distinctive force, and that the liquor was sold and used throughout the state of North Dakota as a substitute for beer, an ordinary intoxicating drink. Such liquor, therefore, in law and in fact, coming within the prohibition of the statute, the courts in a case where a sale is admitted by defendant can only apply the penalty.

It is contended, however, that chapter 187, Laws 1909, if by its terms it includes a description of a liquor not intoxicating, is unconstitutional, for the reason that the subject of the act is not expressed in the title as required by section 61 of the state Constitution. The title of the act is quoted at the beginning of this opinion, and it will be noted that this chapter contains an amendment to an existing statute, and is not a new enactment. This court has adopted rules of construction governing titles of amended and original acts where such objection is made, and these principles have been announced in several of its opinions. Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841; Powers Elv. Co. v. Pottner, 16 N. D. 359, 113 N. W. 703; State v. Burr, 16 N. D. 581, 113 N. W. 705; State v. Peake, 18 N. D. 101, 120 N. W. 47. The rules announced by these cases, most clearly applicable to the points presented by this case, are "the law will not be declared unconstitutional on account of the defect pointed out in the title unless it is clearly so and if the provisions of the act are germane to the expressions of the title the law will be upheld." Also, "it is not necessary that the subject of the particular section amended shall be stated in the tite of an amendatory act." It is sufficient if the subject matter of the amendment is germane to the subject of the act of which the amended section is a part and is within the title of the original act." The original act of which chapter 187 is an amendment was passed by the legislative assembly of 1890 under the title, "An act to prescribe penalties for the unlawful manufacture, sale and keeping for sale intoxicating liquors, and to regulate the sale, barter and

giving away of such liquors for medical, scientific and mechanical purposes." Chapter 110, page 309, Laws 1890. If the subject-matter of chapter 187 is germane to the subject of the law of 1890 and is fairly within the title of that act, its title is sufficient, whether or not it would be so standing alone. It is apparent without argument, we think, that a definition of the meaning of the term "intoxicating liquors" is not only closely related to, but may be said to be a necessary element of, a legislative act which purports to regulate the manufacture and sale of such liquors. Defendant, contends however, that, while a definition embracing liquors generally recognized as intoxicating is germane to this general subject, it ceases to be so when an attempt is made to include within its terms liquors that are not in fact intoxicating. This argument, however, entirely disregards the well-settled principle that a beverage declared by statute to be intoxicating liquor in the eyes of the law and the consideration of the courts at once becomes so. The effect that such liquor may have upon the human system becomes a wholly immaterial incident. In the administration of the law it is an intoxicating liquor, if for no other reason than because the statute so declares. State v. Intoxicating Liquors, 76 Iowa, 243, 41 N. W. 6, 2 L. R. A. 408; State v. Colvin, 127 Iowa, 632, 103 N. W. 968; Commonwealth v. Brelsford, 161 Mass. 61, 36 N. E. 677; Black on Intoxicating Liquors, section 2; State v. Frederickson, 101 Me. 37, 63 Atl. 535, 6 L. R. A. (N. S.) 186, 115 Am. St. Rep. 295. We are not here presented with a case where, as a text-writer suggests may some time happen, the Legislature has undertaken to declare, a beverage absolutely innocent of any intoxicating quality to be an intoxicating liquor. Black, Intoxicating Liquors, section 4. The definition applies only to liquors containing the alcoholic principle or other intoxicating quality, or, in other words, alcohol or some other intoxicating drug; and "alcohol is an intoxicating liquor regardless of the fact that the quantity drank at any one time would not have that effect. * * * However much it may be diluted it must remain an intoxicant when used as a beverage." The language of Judge Brewer heretofore quoted, in which he speaks of alcohol as the intoxicating principle, is pertinent on this point. That such a liquor may be declared to be intoxicating by the Legislature and so regarded by the courts whether or not its ordinary use will produce intoxication in the average man is settled by a concurrence of all authority. This being true, such liquor is appropriately included

in a general statutory definition of intoxicating liquors; and such definition is germane to the general subject of a regulation of the manufacture and sale of intoxicating liquors.

We pass now to a consideration of the third point raised by defendant, that chapter 187, Laws 1909, if it includes in its definition a liquor not intoxicating, is unconstitutional as violating section 64 of the Constitution. This section provides that "no bill shall be revised or amended nor the provisions thereof extended or incorporated in any other bill by reference to its title only, but so much thereof as is revised, amended or extended, or so incorporated, shall be re-enacted and published at length." The purpose of this provision is clearly enough that of preventing an amendment to an existing statute by means of a legislative bill which contains merely the amendatory words or a reference only to the title of the act sought to be amended, and does not give in full the text of the act as it will appear when amended. Defendant argues that chapter 187, Laws 1909, so far as it is amendatory of the general statute, can be operative only when it is combined with or included in the penal provisions of section 9353, Rev. Codes 1905, and, as this latter section is not included and published at length in the amended act, the amendment is unconstitutional.

It is difficult to understand how this constitutional objection can be said to apply to chapter 187, Laws 1909. It is replete in itself, contains no reference to section 9353, and does not purport to amend it. It is true that in practical operation the amended feature of chapter 187 will by implication affect and modify somewhat the meaning of section 9353 as well as of many other sections of the general statute. But, if section 64 of the Constitution is taken to mean that all sections of the general law in any manner affected or modified by an amendatory act shall be incorporated and published at length in the legislative bill containing the amendment, it may require the publication of large excerpts from the Code in every amendatory act of considerable scope, and at each session of the Legislature the amendments intended to be enacted will be hidden in the obscurity produced by publication and republication of volumes of matter from the existing general law. It is not conceivable that this constitutional provision was intended to require acts so useless and burdensome. "The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard

to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws.  An amendatory act which purported only to insert certain words or to substitute one phrase for another in an act or section which was only referred to but not republished was well calculated to mislead the careless as to its effect, and was perhaps sometimes drawn in that form for that express purpose.  Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation.  But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."  People v. Mahaney, 13 Mich. 481.  The objection that the defendant desires to direct against this phase of the law cannot therefore proceed on constitutional grounds.  Its essence seems to be that a definition contained in an amended act by the terms of which a nonintoxicating beverage is declared to be an intoxicating liquor cannot be fairly held to come within the provisions of another section that prescribes a penalty for the manufacture and sale of intoxicating liquors.  This objection is, however, fully disposed of by reference to the principle heretofore announced that any liquor containing the alcoholic principle or other intoxicating quality may be declared by the Legislature to be intoxicating, and, when so declared, must be by the courts regarded as such without further test or question.

We come, finally, to a consideration of the point that a law under which penal provisions prohibits the sale of a liquor that is not intoxicating or otherwise harmful or detrimental to life and health is a violation of defendant's constitutional rights of liberty and property, and not a legitimate exercise of the police powers of the state.  Section 1 of our Constitution provides that "all men   *   *   *   have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property and reputation; and pursuing and obtaining safety and happiness."  Section 13 provides, "no person shall be   *   *   *   deprived of life, liberty or property without due process of law."  These guaranties are in substance the same as those contained in the fourteenth amendment to the Constitution of the United States, and are generally regarded by the courts as securing to the individual the right to enjoy upon terms of equality with others in similar circumstance the privilige of pursuing any ordi-

nary calling or trade and of acquiring, holding, and selling whatever may be legitimately regarded as property. It is a universally accepted principle, however, that the rights of the individual in these particulars are not absolute and may be modified to a degree more or less considerable by measures providing for the general welfare, the protection of the health of the people, the prevention of crime and fraud, and the preservation of the public peace. The power of the state to enact and enforce measures of this character is generally referred to as its police power; and laws passed by a Legislature in furtherance of a legitimate exercise of the police power of the state are valid and enforceable, even though they interfere somewhat with the rights of liberty and property of the individual. All this is conceded by defendant, but he contends, notwithstanding, "that the beverages referred to in the information are the product of painstaking, scientific research. They are more palatable than tea or coffee and less injurious than either. They have been subjected to repeated analyses by the pure food commissioner of this state and always without criticism." That a law prohibiting their sale has not "for its object the prevention of a manifect evil or the preservation of the public health, safety, morals, peace and order, or the general welfare," and is therefore not a legitimate exercise of the police power of the state, but an unauthorized interference with the liberty and property of a citizen.

Many of the characteristics claimed by defendant for the liquor in question are not admitted, and this court cannot take judicial notice of these innocent and harmless qualities. The liquor is admitted to contain alcohol, and, in the absence of an admission on the part of the state that it is not intoxicating, would be presumed to be so. Even though not actually intoxicating in ordinary use, a liquor containing the alcoholic principle unneutralized and in full vigor to any degree whatever cannot be said to be less injurious than either tea or coffee. It is a matter of common knowledge that liquor ·of this description, while not actually intoxicating, may be harmful in the sense that its use cultivates and stimulates an appetite for intoxicants that may become seriously detrimental to the general welfare. Further than this, an alcocholic liquor that is used throughout the state as a substitute for the ordinary intoxicating drinks presents a constant opportunity and temptation to the criminal classes to make it a vehicle of subterfuge, fraud, and a means of evading the penalties of the prohibitory law. Such liquors

cannot be regarded as innocent and harmless, and must be put in a different class from the wholesome foods in common use, or from beverages that do not contain the alcoholic principle. "Alcoholic beverages are under the ban of the law in some form or other in most civilized countries. They are known to be the cause of crime, destitution, and pauperism. Malt liquors used as beverages are known to contain that destructive ingredient. It was proven upon the trial of this case that the beverage kept and sold by plaintiff in error contained it. The liquor sold by him was simply an effort to evade the law." Luther v. State, 83 Neb. 455, 120 N. W. 125, 20 L. R. A. (N. S.) 1146.

The state in the exercise of its police power has an undoubted right to take into consideration, not only the effect of the article sold upon the life and health of the individual, but also the fact that it may be used readily and conveniently as a cover to violations of the law. Elder v. State (Ala) 50 South. 370. As said by the Supreme Court of Kansas in passing upon a statute regulating the sale of cider which it was claimed, as of the liquor in this case, is a harmless and wholesome drink: "It may have been thought that the drinking of cider might foster a taste for strong liquors, and that, if the unrestricted sale of cider by the glass was permitted, the officers might be easily deceived as to the character of the drinks sold, and that a tippling shop might be carried on under the guise of a place to sell cider. In the interest of the health of the people, and the peace and good order of the communities, it was deemed wise to regulate the traffic. To sell it by the glass and allow it to be drank on the premises where sold was deemed to be subversive of good order, and dangerous to the health and morals of the people, and hence they imposed a regulation that it should not be sold in less quantities than one gallon, and should not be drank at the place of sale. Such a · regulation violates no private right, and does not unreasonably · or improperly restrain trade." Monroe v. City of Lawrence, 44 Kan. 607, 24 Pac. 1113, 10 L. R. A. 520. Under similar principles, the Supreme Court of the United States has held valid a statute prohibiting the sale of oleomargarine and the Supreme Court of Wisconsin has applied the same rule in its construction of a law prohibiting the sale of malt liquor. Powell v. Pennsylvania, 127 U. S. 678, 8 Sup. Ct. 992, 32 L. Ed. 253; Pennell v. State (Wis.) 123 N. W. 115. See, also, Feibelman v. State, 130 Ala. 123, 30 South. 384; United States v.

Cohn, 2 Ind. T. 474, 52 S. W. 38; State v. Durein, 70 Kan. 1, 78 Pac. 152, 15 L. R. A. (N. S.) 908; State v. Guinness, 16 R. I. 401, 16 Atl. 901; State v. Frederickson, 101 Me. 37, 63 Atl. 535, 6 L. R. A. (N. S.) 186, 115 Am. St. Rep. 295.

We hold, therefore, that chapter 187, Laws 1909, was constitutionally enacted, and so far as it interferes with individual rights and property is a legitimate exercise of the police powers of the state. We further hold that it fairly and reasonably includes within its terms the description of liquor such as the defendant admits he sold after the law was in full operation.

Pursuant to these holdings, the judgment of the district court is affirmed. All concur, except FISK, J., dissenting.

SPALDING, J. I concur with my associates in their opinion expressed through Judge ELLSWORTH, but think the legislative assembly in framing the act in question only attempted to divide the liquors enumerated or described into two classes. It is reasonably clear to me that an attempt was made to place those named or described in that part of the act which precedes the semicolon in one class having reference to their quality and the proof necessary regarding them in prosecutions. Those described or named in that part of the act following the semicolon comprise the second class, and are enumerated together with reference to the same things. In the first class are those which are recognized as intoxicating in fact. Those in the second class containing the alcoholic principle or intoxicating qualities as a distinctive force so they may be used as or become a substitute for the ordinary intoxicating drinks, and other compounds containing coculus, indicus, etc., may not be intoxicating in fact. The use of those enumerated or described in the second class may create an appetite for intoxicants and their possession or sale may serve as a cover for evading the law relating to intoxicants and thus render its enforcement difficult or impossible. For these reasons, the act provides that those of the latter class "shall be considered and held to be intoxicating liquors within the meaning of this chapter." That is to say, in prosecutions under the prohibitory law, liquors coming under the second classification shall be held to be within the purview of the law on the subject of prohibition. That the prohibition of the sale of the latter class of drinks is constitutional is established by a large number of authorities, several of which are cited in the opinion of Judge ELLSWORTH. Divided into these two classes, as I think the

legislative assembly intended, no conflict exists between the two divisions of the law.

FISK, J. (dissenting in part). I regret my inability to concur in toto in the foregoing opinion. Everything therein contained meets with my unqualified approval with but one exception. I feel compelled to differ with the majority opinion upon the first proposition considered. It is well stated by my Brother ELLSWORTH that nothing is to be regarded as included within the provisions of the statute "that is not within its letter as well as its spirit." I freely admit that the prohibition of the sale of malt liquor, whether intoxicating or not, was probably the intent aimed at by the author of the bill, but that the letter of the statute, under any known rule of statutory construction, warrants the court in giving effect to such probable intent, I deny. I believe such interpretation is at war with the plain language employed. In the light of the record admission of the state's attorney that the malt in question is not intoxicating in the least degree, there is no room for the contention that, by the plea whereby defendant admits the truth of the facts alleged, it admits its violation of the statute in question. As I view it, the vital, controlling, and sole question is as to whether a malt liquor concededly nonintoxicating in the least degree is included within the ban of the statute when such statute is construed according to its letter as well as its spirit. In dealing with the statute I shall accept the classification adopted in the majority opinion. Under the second class is included, as stated in such opinion, "all spirituous, malt, vinous, fermented or other intoxicating liquors or mixtures thereof by whatsoever name called * * * that will produce intoxication of any degree, or any mixtures of such." By the use of this language it is perfectly apparent to my mind that, at least in so far as the letter of the statute is concerned, it was evidently the purpose to define "malt," as well as the other liquors mentioned in such class, to be intoxicating, and therefore the sale thereof prohibited, only on condition that they "will produce intoxication of any degree." Such is the plain language employed.

But it is said that class 3 is broader than class 2, and includes everything covered therein, and that malt and the other liquors, although not intoxicating in the least degree, are nevertheless prohibited, provided they retain "the alcoholic principle or other intoxicating qualities as a distinctive force" and "may be used as a beverage and become a substitute for the ordinary intoxicating

drinks." I contend that the general language employed in class 3 cannot reasonably be construed to cover the liquors specifically mentioned in class 2, and which are prohibited only when they "will produce intoxication of any degree." To say that the Legislature in the same section placed the ban on malt and certain other specially enumerated liquids only when they "will produce intoxication of any degree," and also immediately thereafter prohibited their sale regardless of whether they would produce intoxication of any degree, is contrary to all recognized rules of statutory construction.

The language employed in dealing with the third class is, in substance, the same language employed by Judge Brewer while on the Kansas supreme bench in dealing with a class of liquid mixtures and compounds which were used as a beverage and contained the alcoholic principle as a distinctive force in such mixture or compound. Intox. Liquor Cases, 25 Kan. 751. The language thus borrowed from the opinion of this eminent jurist is, I think, wholly misapplied, when given the meaning and effect which the majority opinion gives to it. Not only this, but such a construction of the language used in class 3 renders not only wholly unnecessary, but useless and meaningless, the specific statutory provisions of class 2. I am of the opinion that the only proper intention to attribute to the Legislature in the use of the language employed was the intent with which similar language was made use of by the Kansas court, which was to cover a class of liquors or mixtures not previously enumerated, but which "retaining the alcoholic principle or other intoxicating qualities as a distinctive force, may be used as a beverage and become a substitute for the ordinary intoxicating drinks." I think the language "retaining the alcoholic principle as a distinctive force," as used by Judge Brewer with reference to mixtures and compounds was intended by him to apply to the intoxicating quality thereof as a distinctive force; i. e., a force which would, if such liquor was taken in sufficient quantity, manifest its intoxicating quality.

A forced construction of this statute is neither demanded nor justified by a sound public policy. The manufacture and sale of malt of the character here in question has at all times up to the passage of the statute in question, at least, been perfectly legitimate, and quite an extensive industry has been established in its manufacture and sale, which is struck down by the majority decision.

That the Legislature has the full right within the police power of the state to prohibit its manufacture and sale I entertain no doubt, but it is an easy matter to do so in unmistakable language, and I do not believe it to be the duty nor within the legitimate function of the courts to construe as within a criminal statute acts not fairly within the letter thereof.

(124 N. W. 387.)